quire a plaintiff to furnish a bill of particulars before joinder of issue. We do not think that any such showing was made, or that the defendant required the particulars sought for the purpose of answering. The motion should therefore have been denied.

The order is accordingly reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

---

(15 App. Div. 426.)

FANDEL v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. March 19, 1897.)

STREET RAILROADS—INJURIES TO PASSENGER CROSSING TRACK—EVIDENCE.

Plaintiff was struck by defendant's cable car while she was attempting to cross the track. At the place of the accident there were two cars in each block, so that it was necessary for persons crossing the street to pass a short distance in front of approaching cars. Plaintiff testified that she saw the car, and thought that she could cross before it reached her. She also testified, with several corroborating witnesses, that she was on a cross walk at the time of the accident, and that the speed of the car was suddenly increased just before it reached her, but this evidence was contradicted by defendant's witnesses. Held, that a finding of negligence and freedom from contributory negligence was sustained by the evidence.

Ingraham and Patterson, JJ., dissenting.

Appeal from trial term, New York county.

Action by Kunigunda Fandel against the Third Avenue Railroad Company. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Nathan Ottinger, for appellant.
M. P. O'Connor, for respondent.

RUMSEY, J. The case was tried at a trial term in October, 1896. It is an action for damages sustained by the plaintiff by reason of the negligence of the defendant. It was submitted to the jury in a careful charge by the court, which was unexceptionable, and to which but three unimportant exceptions were taken, not argued or relied upon upon this appeal. There was one exception taken to the admission of evidence, but it is quite as unimportant as the exceptions to the charge. The only serious point made upon the trial is that upon the facts there was not sufficient proof to sustain the verdict, and for that reason it was error to send the case to the jury. The case, however, having been submitted to the jury, and their verdict having been given in favor of the plaintiff, she has the right to have this appeal considered upon the most favorable view that can be taken of the evidence adduced in her behalf, and upon the theory that every fact as to which there was a contest was found in her favor by the jury. If there was evidence to sustain the facts so found, and if those facts are sufficient to establish her cause of action, she can hold the verdict which she obtained from the jury. In examining questions of this kind, it must be remembered

that foot passengers, as well as horsemen and those who operate street cars, have equally a lawful right to use the street for all proper purposes and at all proper places. It is quite true that street cars, which run upon rails laid down in the street, and cannot turn out, and which are large and heavy vehicles, moved by machinery, necessarily have, to a considerable extent, the right of way, and it is the duty of pedestrians to use reasonable care to avoid them; but yet there is a corresponding duty on the part of the drivers of street cars, who must, in the exercise of due care, so control the speed of their cars, and give such notice of the approach of their cars to places where pedestrians are using the street, that such pedestrians can avoid them, in the exercise to proper care. This duty is all the more stringently to be insisted upon in the case of corporations like the defendant, whose cars are of great weight and are run at a comparatively high rate of speed, so that great care on the part of the gripman as well as on the part of pedestrians is required to avoid serious, if not fatal, accidents. These rules are so well settled as not to require the citation of any authority to establish them, and these are the rules which must be applied in the decision of this case.

As has been said, the facts in this case must be taken as much in favor of the plaintiff as the evidence would warrant. The accident occurred between half past 7 and half past 8 o'clock on the evening of May 4, 1894. It was after sundown, but was not yet dark. The plaintiff was struck by a car of the defendant's going uptown as she was attempting to cross Third avenue at the crossing of Ninety-Fifth street. It was testified by the plaintiff's witnesses that at the time she was struck she was near or upon the north cross walk. Her daughter, who was the first witness, testified positively that at the time of the collision she was at the cross walk when she was struck. Her son testified to the same thing, as did the plaintiff herself. A disinterested witness, Michael Bogara, called on behalf of the plaintiff, testified positively, on his direct examination, that he saw her hit by the street car at the north cross walk; and, while strenuous efforts were made upon cross-examination to get him to contradict himself upon that point, he persisted in the testimony, and his evidence was not shaken. This testimony was contradicted by the testimony of the witnesses on the part of the defendant, but it must be assumed that the jury found the fact to be as alleged and proved by the plaintiff. It appeared that the plaintiff started from the west side of the street to go to the east side. When she approached the car tracks a car was going downtown upon the westerly track. That car was followed by a truck. The plaintiff stood near the track until the car and the truck had passed her. She then crossed the westerly track, and apparently became aware of a car coming from the south uptown upon the easterly track. She stood between the two tracks while another car from the north passed down and the car from the south passed up. Behind the car going north, at a short distance, which is not precisely stated, was another car, also going north. This car, as it seems, was seen by the plaintiff before she attempted to cross the east-

erly track in front of it. Although she saw it approaching, she nevertheless attempted to cross the track in front of it, but she was struck while so doing; and it is necessary to examine particularly into the situation of affairs when she made that attempt to enable us to ascertain whether there was negligence on the part of the street-car company which caused the accident, as well as a lack of contributory negligence on her part.

The plaintiff said upon her examination that she saw this car coming, and she thought she could cross; that the car was not going so fast when she stood between the tracks and saw it at the lower crossing, but it was going faster when it knocked her down. She said that she saw the car all the time, and she saw how fast it was coming, but, of course, that testimony must be taken in connection with the fact that she was almost directly in front of the car; and it would be difficult for her either to gauge the speed of the car, or to say accurately whether it increased its speed after she started to cross the track. Of course, if her evidence is to be taken as absolutely conclusive, as seems to be insisted by the appellant, then, as the jury found in her favor, it must be taken as conclusive not only as to those points which tell against her, but as to those points which tell for her; and, taken in that way, it establishes that there was an increase of speed in the car from the time she stood between the tracks and saw it at the crossing just below her and the time when it struck her and knocked her down. But there is other evidence as to the speed of this car which is of considerable force. The conductor said that the car was going at the ordinary speed. Whether it was going as fast as the cable went, he was not able to say. His testimony was corroborated by O'Connell, called on behalf of the defendant, who testified substantially to the same thing. There was other testimony to the effect that the car was going somewhat slowly, but all this testimony, it must be remembered, was the impression formed on the mind of each witness at the particular time when he saw it; and whether that particular time was the moment when it struck the plaintiff, or shortly before, and just about the time she started to cross the track, is not in all cases easy to be ascertained. In actions like this, as is well known, there almost always are considerable discrepancies in the testimony of witnesses on points of time, rate of speed, and distance; but these discrepancies are caused more by inability to judge accurately, and by the fact that witnesses do not all refer to the same time at which a thing occurred, than by any real difference in the fact, or even as to their judgment as to the fact. In cases like this, where the question is a question of fast or slow, it is impossible to say that a conclusion of the jury, where there is evidence to sustain it, is erroneous, but, in the nature of things, the court must adopt it. There was evidence in this case, besides that of the plaintiff, to sustain the proposition that the rate of speed of the car increased after the plaintiff started to cross the track. The evidence of her son, who stood looking at her, is precise upon that point. He says it was coming pretty fast when it struck her, but it went faster. He says that it went faster when it struck his

mother than it did when he saw it at the lower crossing of the street. The jury believed the evidence of this boy, as they had a right to do; and there is reason, in the nature of things, to suppose that the boy's evidence was accurate. The ordinance requires street cars going uptown to stop at the upper crossings of the cross streets, and it is quite natural, and not at all unusual, for the gripman to slacken the speed of his car in crossing the streets, not only by way of reasonable caution, that he may avoid vehicles that come out of the street to cross the avenue, but by way of proper preparation to stop at the crossing to let passengers on or off; and it is not at all improbable that having slackened the speed of his car for the purpose, and not having received a signal to stop, he permitted the speed to again be accelerated as soon as he found that it was not necessary to stop at that crossing. To be sure, there is no evidence that this was the condition of affairs; but these considerations were legitimate for the jury, who are to judge of the weight to be given to testimony from their own experience and observation, and they are legitimate for courts to consider when they are called upon to decide upon the weight to be given to testimony. If it was established that this street car accelerated its speed after the woman stepped upon the track, then we think that the jury had the right to find from that fact, in connection with the undisputed fact that she was struck by the car just as she had gotten over the last rail, that she was not guilty of contributory negligence in attempting to cross as she did. It appeared from the testimony that there were about two cars on each block. It was necessary for one attempting to cross the track to cross somewhat closely in front of any street car, and it was not contributory negligence, as a matter of law, to do so, unless the speed of the car was so great, and its proximity so close, that the pedestrian would not probably be able to escape it. As is well known, even careful persons must, in pursuance of their ordinary avocations, cross the streets of this city in front of vehicles and moving cars; and to say that to do that constituted contributory negligence, as a matter of law, would put an embargo upon the streets, so far as pedestrians were concerned. We think, upon the facts as the jury might have found them, the plaintiff was not guilty of any contributory negligence. The daughter of the plaintiff testified that no signal of the approach of this car was given, and the jury were at liberty to believe her testimony in that regard. If that fact be taken in connection with the further fact that the speed of the car was accelerated after the plaintiff attempted to cross the track, and when she must have been in plain sight of the gripman, we have a condition of affairs which would clearly warrant the jury in coming to a conclusion that there was negligence on the part of the defendant. A very careful consideration of the other evidence leads us to the conclusion that upon the whole case the court was required to send the case to the jury, and the jury were warranted in the conclusion which they reached.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concur.

44 N.Y.S.—30

INGRAHAM, J. (dissenting).   The plaintiff, who describes herself as a strong, active woman, while attempting to cross the tracks of the Third Avenue Railroad Company, in the city of New York, was struck by a car and injured.   The defendant insists that there was no evidence to justify a finding by the jury that the accident was caused by its negligence, or that the plaintiff was free from contributory negligence.   The case presents the usual conflict of testimony.   The jury having found for the plaintiff, the plaintiff is entitled to have the story told by her and her witnesses accepted; and we have then to determine whether, accepting that story as true, the finding that the defendant was negligent and that plaintiff was free from contributory negligence can be sustained.   The plaintiff testified that, as she was attempting to cross Third avenue from the northwest corner of Ninty-Fifth street, she walked to the westerly track, waited there until a cable car followed by a truck had passed, then crossed the west track, saw a car approaching from the south, walked across in front of that car, but before getting across was struck and injured.   It was daylight, no obstruction preventing the plaintiff from seeing the approaching car, and nothing to interfere with her appreciation of the situation in which she stood; but she, seeing the car approaching, walked in front of it, and was struck and injured.   The learned trial judge held that, if this were all the evidence, it would be his duty to dismiss the complaint upon the ground that the plaintiff took the risk of crossing in front of the car, and must bear the consequences of the injury.   He, however, held that there was evidence from which the jury could find that the speed of the car was increased, and, if that was so, then she was not guilty of contributory negligence, as a matter of law, but that it was a question of fact for the jury.   It is this decision of the learned judge that the defendant challenges upon this appeal, and which we have to consider.   The court quite correctly charged the jury that the gripman had the right to assume that the plaintiff would keep out of the way of the car, and to act upon that assumption, as long as there was no appearance or indication that the plaintiff would put herself in a position of danger from the car, "but from the moment the gripman realized, or in the exercise of proper care and caution, and by keeping a proper lookout, or otherwise, should have realized, that the plaintiff put herself in such a dangerous position,—from that moment, and not before,—it became the duty of the gripman to use all the means which a careful and prudent gripman would have exercised under the same circumstances to avoid injury to the plaintiff."   Is there any evidence to show that this gripman did not exercise the care and caution of a careful and prudent gripman from the moment that the plaintiff put herself in front of the approaching car? My examination of the testimony has convinced me that there is no such evidence.   In the first place, there is no evidence to show how far the car was from the plaintiff at the time she attempted to cross the track, except the evidence of the witnesses of the defendant, which placed her but a few feet in front of the car.   The plaintiff's case depended upon the testimony of three witnesses,—her-

self, her daughter, and her son, a boy 12 years of age. The daughter was the first witness. She said that the plaintiff crossed the first track and stood between the east and west tracks, and that while she stood there a car passed her, between the plaintiff and the witness, going downtown; that, after this car going downtown passed the plaintiff, she was still standing between the two tracks, and then started to go across, but was struck in the attempt to cross the track by the car going uptown. She testified that when she first saw this car it was some distance below Ninety-Fifth street, and her mother was standing on the cross walk of Ninety-Fifth street, and that when she next saw the car it was near her mother, not far away from her, and she was crossing then. At the time the car was between the two crossings the plaintiff was just crossing the uptown crossing of the cross walk. The witness did not at any time state the distance that the car was from the plaintiff when the plaintiff first attempted to cross the walk. There was nothing said by this witness as to any increase of speed in the car at any time. The next witness called by the plaintiff was the plaintiff's son, a boy 12 years of age. He says that he stood on the northwest corner of Ninety-Fifth street; that his mother left him there, and started to cross the street, upon the sidewalk; that she got as far as the first track; that a car came from uptown and she had to wait; there was a truck behind, and she had to wait; then the car came from downtown uptown, and this car knocked her down; that he saw the car when it was at the lower crossing at Ninety-Fifth street; and that his mother was then in the middle of the two tracks. That was before she attempted to cross the east track; but this boy does not testify as to where the northbound car that struck his mother was when she walked upon the track and attempted to cross, and there was nothing to show how far off that car then was. The plaintiff was also called as a witness, and testified. She said that she stood between the two tracks, and saw a car on the lower crossing coming up; that she looked and thought that she could cross; that she started to cross, and got to the last track, the last rail of the uptown track, when the car struck her and threw her down. She remembered that the car was going fast when it struck her and knocked her down, and the car was not going so fast when she stood between the two tracks and saw it at the lower crossing. She further testified that it was not dark; that she was not at all excited when she saw the car coming; that she noticed at the time the rate of speed of the car, saw just how fast it was coming when below the cross walk at Ninety-Fifth street, kept her eyes on this car all the time, and then, seeing this car coming on, and watching its speed, she stepped upon the track, and then knew nothing else until she was in the hospital. In all of this testimony there is not one word to show how far off the car was from the plaintiff when she first placed herself upon the track in front of the car. This gripman was not bound to stop the car as long as the plaintiff stood upon the roadway between the tracks, in a place of safety. He could not assume that she would attempt to cross the track, thus exposing herself to the danger of being struck by the approaching car, until she had actually walked upon the track,

or in some way indicated an intention to cross in front of the car. The burden of proof is upon the plaintiff, and she must show that after she got upon the track the defendant's agent neglected to stop the car and thus avoid the injury. There is nothing to show that when the plaintiff got upon this track the car was such a distance from her that it was possible to stop it, or that the gripman neglected to stop it, and because of such neglect the injury resulted.

There were several witnesses called by the defendant, who seemed to be entirely disinterested. Becherer testified that as the plaintiff got to the west track a car was going south, and she paused and let it pass and started across; as she crossed over she found herself almost directly in front of the car, and she hesitated, and the car struck her and threw her under the wheels; that the car was about 8 or 10 feet away from her when she stepped upon the rail; and this witness was the first that got to her after the injury, and helped to take her from under the car. The conductor of the car testified that he was in the car at the time, collecting fares; that he heard a scream, and the car gave a sudden stop,—was stopped so suddenly that the passengers were thrown forward. Carney, another witness for the defendant, said that he saw the plaintiff run ahead; the car was probably 10 or 12 feet from her; she rushed ahead, and the car knocked her down; and the witness assisted in taking her from under the car. It appears that this car was then going on a down grade; the fall between Ninety-Fifth and Ninety-Sixth streets being about 2 feet 4½ inches in 100 feet. Now, this is all the testimony that there is in the case to show the distance of the car from the plaintiff when the plaintiff attempted to cross the track, or from which the jury could find that the gripman could have stopped the car before striking the plaintiff, the undisputed evidence being that the plaintiff was but 10 or 12 feet in front of the car when she attempted to cross. She testified that the car was then coming towards her very fast. It is quite evident that upon this evidence there is nothing upon which the jury could find that the gripman was negligent.

The rule is well settled that the railroad company's cars have a preference in the streets, and that pedestrians must use reasonable care to keep out of their way. See Fenton v. Railroad Co., 126 N. Y. 625, 26 N. E. 967. Thus, plaintiff stood in a safe place, outside of the track. She had already allowed one car to pass her, saw another car approaching, and when it was 10 or 12 feet from her she attempted to run across in front of it. The injury was the direct result of her act in running across in front of the car, and not the result of any negligence on the part of the gripman or other agent of the defendant. Whether the speed of the car increased or not after it left the south corner of Ninety-Fifth street is immaterial. There is nothing to show that the speed of the car was increased between the time that the plaintiff stepped upon the track and the time she was struck, and nothing to show that after the plaintiff stepped upon the track any action of the gripman, however prompt, could have averted the accident. So far as appears, he did everything he could to prevent the accident. If the plaintiff had simply waited in her place of safety for a few seconds to allow the car to pass, she

would not have been injured; and her injury in this case must be said to be, as in the case of Fenton v. Railroad Co., supra, due to her own carelessness, or it was a pure accident, and in either event the defendant cannot be held responsible for it.    The case of McGuire v. Railroad Co., 9 App. Div. 529, 41 N. Y. Supp. 577, cited by the plaintiff, is not in point.    There the court say that the situation was a peculiar one; that the plaintiff's intestate's view of the car which caused the injury was obstructed by a brewery wagon which passed between him and the car.    That car stopped to allow the brewery wagon to pass.    As soon as it passed, the gripman started the car up suddenly.    The deceased then found himself in a critical position.    He hesitated and jumped back, but too late, and was struck by the rapidly advancing car.    It was held that under these facts there was a question for the jury.    Here the plaintiff herself testified that she saw the car approaching before she stepped upon the track, noticed its speed, understood the situation, and with that knowledge started to cross the track in front of the car.    Under the circumstances, the accident was the result of her own act, for which the defendant was not responsible.

The judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, J., concurs.